# Exhibit B

## Declaration of Jason Anderson

## DECLARATION OF JASON R. ANDERSON

The undersigned, Jason R. Anderson, being under oath, states as follows:

1.      I am over 18 years of age and of sound mind. I make this declaration upon my
own knowledge, information, and belief, and if called upon to testify I could and would
competently do so.

2.      In late 2018 I was introduced to Daniel Putnam ("Putnam") via Harry Singh. Due
to my interest in investments related to cryptocurrency, a business associate who knew that Mr.
Singh was also involved in cryptocurrency introduced me to Mr. Singh. Harry Singh was a
distributor of R&D Global, LLC ("R&D Global"), which is a multi-level-marketing ("MLM")
company owned and managed by Putnam. Shortly thereafter, Mr. Singh introduced me to Mr.
Putnam.

3.      At my first meeting with Putnam, he proposed that I invest my money with him
and his company R&D Global in a bitcoin investment program that he had developed. Putnam
explained that the bitcoin investment program involved purchasing certain bitcoin "trading
packages" that generated returns through various means, including bitcoin mining, generating
transaction fees, and bitcoin arbitrage.

4.      Putnam proposed that I invest bitcoin through one of R&D Global's MLM
companies, Modern Money Team ("MMT") or Eyeline Trading, which he said were DBAs of
R&D Global. (Eyeline Trading's name was later changed to WealthBoss in early 2019). I told
Putnam that I was not interested in participating in an MLM company.

5.      A few days later, Putnam contacted me and told me that I could invest in his
bitcoin investment program in a way that was separate from his MLM companies, and promised
me that my investment funds would not be pooled or comingled with the MLM funds.

1

6.      Putnam stated that his company R&D Global would manage and control the investments.

7.      I requested information from Putnam to try to ensure that the investment plan was sound and compliant with relevant laws and regulations, and Putnam and his business colleague Angel Rodriguez ("Rodriguez") provided me with several documents. One document that Putnam gave me was from R&D Global dba Eyeline BTC (copy attached at Exhibit 1 hereto), which states, among other things:

      a.      that the investment was compliant with U.S. and Canada SEC and FTC regulations;

      b.      that each investor would "receive an individual account, so funds are not pooled";

      c.      that each investor account "has an on/off switch, so it is individually controlled, another key aspect of not falling under many SEC rules";

      d.      that "it is planned to have EACH member's trading allocation sit in an individual account so the total funds collected and traded is NOT seen as a pooled investment, in compliance with regulatory issues";

      e.      that "the company's SEC lawyers see NO red flags";

      f.      that "Each individual account is held separately, like a PAMM account in Forex."

9.      Putnam represented to me that my bitcoin investments would have daily returns of .33% per day on the total invested capital.

10.      Putnam also represented that my bitcoin investments would be held at BitFinex, an international cryptocurrency exchange, in an account controlled by R&D Global.

11.     Putnam claimed that my bitcoin funds would be deposited at BitFinex through his or R&D Global's broker Jean Paul Ramirez Rico ("Jean Paul") and Jean Paul's entity Eyeline Business Development, located in Columbia, South America.

12.     Rodriguez told me that he had introduced Putnam to Jean Paul.

13.     Putnam and Rodriguez made these and other representations to me for the purpose of inducing me to invest bitcoin with R&D Global.

14.     Based on Putnam's representations and promises, I invested funds and bitcoin of my own with R&D Global (dba several other entities, including Bitzolkin and Bzlogin) over the course of late 2018 and through November 2019.

15.     On December 3, 2018, Rodriguez did a You-Tube video interview of Jean Paul, wherein Rodriguez indicates that he is "Co-Founder Eyeline Trading."

16.     I have personally invested a total of approximately 168.6030 bitcoin with R&D Global. (I made additional bitcoin investments with Putnam/ R&D Global through my business, Business Funding Solutions, LLC). Since November 2019 my personal account at Bzlogin shows that I own a total of 181 bitcoin, which includes the 49.2856 bitcoin that Putnam and R&D Global supposedly added to my account as returns on my investments, less 36.3358 bitcoin that I withdrew from that account. As of March 11, 2020, bitcoin is trading at approximately $7,971 per bitcoin.

17.     Throughout late 2018 and much of 2019, my investment account with Bzlogin showed that my investment funds were being invested and traded and generating significant returns.

18.     Beginning in November 2019 I began to learn that the promises and representations to me by Putnam about his bitcoin investment program were false.

3

19.    In November 2019, Putnam told me that all of my investment funds have been frozen by BitFinex.

20.    Putnam told me that my bitcoin had been transferred to an account owned by a company called Global Money Management, or GMM, and that GMM had an account with Jean Paul's company Eyeline Business Development, which in turn traded bitcoin through its account at BitFinex.

21.    In November 2019 I participated in a phone call with Jean Paul, along with my brother Jacob Anderson, and with another investor named Travis Bott, who speaks Spanish and who served as interpreter.

22.    Jean Paul said that Putnam and Rodriquez were the only two signers on the GMM account at Eyeline Business Development. Jean Paul said that Putnam or Rodriguez would regularly deposit bitcoin into their GMM account at Eyeline Business Development, but then they would routinely withdraw similar amounts of bitcoin from that same account the following day.

23.    In December 2019 Putnam disclosed to me that my invested funds had not been maintained in separate accounts as he had previously promised, but instead had been combined with funds of R&D's other investors, including MLM investors, into one large, undifferentiated account.

24.    I have been prohibited from withdrawing any of my investment funds since November 2019, in both my personal and my Business Funding Solutions account, and I have been denied access by Putnam and his companies to monitor the status and location of my investments.

4

25.     In December 2019 I hired an attorney who on December 18, 2019 sent a letter to Putnam and to Putnam's colleague, Angel Rodriguez, demanding information about the status of my investments, and demanding documentation about all my accounts with him.  (A true copy of that letter is attached as **Exhibit 2**).  Neither Putnam nor Rodriguez ever responded to that demand letter and to date they have failed to produce any of the documents requested.

26.     On January 22, 2020 I filed a Verified Complaint against defendants Putnam and Rodriguez, and Putnam's company R&D Global, in the United States District Court for the District of Utah.  (A true copy of that Verified Complaint is attached as **Exhibit 3**.)  My brother Jacob Anderson, and my father Gordon Larry Anderson, who also invested bitcoin with Putnam/R&D Global are co-plaintiffs with me in that lawsuit, along with my company, Business Funding Solutions, and my father's company Profit Vault, LLC.

27.     On or about February 14, shortly before Putnam's and Rodriguez's Answers were due to the Complaint, Putnam called and arranged me to meet with him and Rodriguez along with my brother Jacob.  We met at Starbuck's on 2100 South in Salt Lake City.

28.     Both Putnam and Rodriguez told me that Rodriguez had arranged for our bitcoin to be invested with Jean Paul.  Rodriguez said that he personally owned about 160 bitcoin in his GMM account at Jean Paul's company, Eyeline Business Development.  He said he acquired that bitcoin from commissions that he had earned from investors with his and Putnam's program. He showed us a computer screen purporting to reflect that account.

29.     Rodriguez and Putnam said that they possess a thumb drive containing copies of documentation relating to their dealings with Jean Paul, which Rodriguez claimed he had obtained from Jean Paul.  Putnam and Rodriguez both tried to persuade me and Jacob to drop our lawsuit against them and instead to just pursue Jean Paul, even though we don't have a direct

5

contract with Jean Paul and even though we have never been given me a copy of that thumb drive of documents nor any of the other documentation requested in the December 18 demand letter from my attorney to verify or discover where my bitcoin went once it went into accounts controlled by Putnam and Rodriguez. They refused my requests then and later for a copy of those documents.

30.    As of March 11, 2020, my personal and business online account information at Bzlogin continues to not allow me to make any transfers or withdrawals. I declare under criminal penalty of the State of Utah that the foregoing is true and correct to the best of my knowledge and recollection.

Executed this ___17___ day of March, 2020.

Jason R. Anderson

# Exhibit 1



**Here's our bullet point list of what we've learned so far:**

- 3 year old established company with the opportunity of being available globally.
- Automated Trading Packages are just $1000 in BTC. You can buy as many as you want, however, more than 25 packages might require additional account verification.
- The packages have individual buy/sell/trade freedom connected to them, so that each purchaser makes their own trading decisions, which is key to SEC compliance.
- Option to join at a free level, refer and earn commission for seven days.
- 20% commission on your personally referred members, if you have purchased at least 10 trading package. 10% for members with at least one package.

**What have we learned so far about Eyeline Trading since the June 30 meeting in Mexico in terms of due diligence?**

- The pre-launch kickoff weekend in Puerto Vallarta went better than expected.
- There are two companies: Eyeline BTC which is the marketing company and Eyeline Business and Development which has been crypto mining and trading for three years.
- Both companies are very REAL and their level of compliance is better than expected-also, in terms of US/Canada SEC and FTC compliance.
- The big news, from an SEC standpoint, is that each member will receive an individual account, so the funds are not pooled. Each account also has an on/off switch, so it is individually controlled, another key aspect of not falling under many SEC rules.

**The trading company already have their own:**

- Wallet
- Exchange
- Coin
- Crypto processing deals with partners in the online gaming industry.

**Eyeline Trading Packs and Regulatory Compliance:**

- Packs are $1000 each in BTC. $500 is put into trading; yielding up to .66% per day. $500 goes to admin costs and to commissions.
- There will be an ON/OFF button in the back office for the trading packs in the back office.
- Members can turn OFF the trading at any time.
- Members can turn OFF and ask for a refund of the $500 component from each pack that went to the trading company.
- There is NO refund of the $500 from a pack that went to commissions/operating costs.
- It is planned to have EACH member's trading allocation sit in an individual account so the total funds collected and traded is NOT seen as a pooled investment, in compliance with regulatory issues.

**Disclosure of Trading Results:**

- There will NOT be full disclosure of all the trading since most of the profits are OTC (over the counter) BTC trades.
- FULL transparency would disclose details of private IP and client details.
- Lawyers will issue a legal document, like a stock certificate, monthly- showing the results.
- Where possible, trading results will be shown and other profit generating activities.
- No… they won't be disclosing details of who their traders are to avoid having members bombarding them will calls/contact to ask for advice and confirmation if they are real.

**SEC and Regulation:**

- SEC lawyers do NOT give approval… they give OPINIONS.
- Currently, the company's SEC lawyers see NO red flags. On/off switch and individual accounts rather than pooling make the packs different than USI packs.
- However, the industry is still very unregulated, so it's a case of adapting as regulations change.
- NO… they won't be disclosing details of who the lawyers are, to avoid members call the law firm constantly to see of they are real and creating problems. The lawyers have been interviewed in detail at the meeting in Mexico.

**Compounding:**

- Still debating if compounding will have an AUTO rebuy option or not.
- Legal opinion on the auto-rebuy has been mixed.
- NO company calculators, as it suggests projected income and creates expectations.
- There are many generic online calculators that do the same thing.

**Website**

- The corporate website is still under development in terms of content.
- The system was put live to allow IT to detect bugs and user interface issues in a live environment.
- Graphic designers are still working on the site.
- The backend programming is being tweaked to accommodate a significant change in the payment structure, at the request of field leaders, to pay commissions out weekly rather than monthly.
- This re-programming means that live replicated sites are expected to be ready around July 13th or so.
- Explanation of the packs and comp plan are accurate.
- Servers are in house.
- Programmers are in house.

**Payments:**

- BTC payments are handled via third party processor.
- SSL certificate will be added but not necessary as all passwords are encrypted. NO credit cards are used or info stored, and the payment processor is a secure third party.
- 2FA will be added to make withdrawls more secure.
- NO KYC needed until the cumulative total of pack purchase reaches $10,000.

**Commissions:**

- Commissions on personal sales paid in real-time.
- Commissions paid in BTC.
- Minimum of $10 in BTC to withdraw.

**Support:**

- Currently, support staff speak English and Spanish.
- Two of the support staff hold law degrees and will help with compliance.

**Social Media, Negative Reviews, Compliance:**

- A team of people will monitor social media activity and enforce compliance.
- Others will monitor and maintain positive reviews and deal with negative reviews.
- Members who violate rules will be given one warning. A second violation will result in termination.

**Summary:**

If you look at the first 2 or 3 items about the pack and the fact that you can turn OFF the trading and get back your trading allocation at any time makes this better than other company's products.

If people expect 100% transparency of EVERYTHING, this is NOT for them. By the way, they WON'T get that level of transparency from a Bank, Hedge Fund or Investment House. Is there RISK? Yes, that's a given. So, only risk what you can afford to lose.

* All info on this page is subject to change and is not officially released by corporate.

**Eyeline Trading Offers Automated Trading With Personal Control!**

Regulators deem programs as a security if…

● The funds of ALL investors are going to a single third party (a "common enterprise") where the funds are pooled;

● The profit generated is outside of the investor's control, meaning that it is done 100% by the third party and the investor has NO control over the profit generation in terms of, for example, turning it off and on or stopping the activity in regard to their own funds being invested;

● The program offers a guaranteed result.

Below are measures that have been taken by Eyeline Trading and Eyeline Business Development to operate in a compliant manner and not be considered as a security by the regulators.

**1. Your trading funds are traded by an independent, licensed trading company.**

a. The Marketing Company that manages the affiliate program and offers the product is owned and managed by completely different people to the Trading Company that does the trading. Different companies, different owners, different management.

b. The Marketing Company and the Trading Company only accept and use Bitcoin, which securities regulators recently have stated is itself not a security.

c. Out of each $1000 BTC pack, $500 of Bitcoin is transferred to the Trading Company to be traded to generate profits.

d. There will be a contractual arrangement between the purchaser and the Trading company to protect your trading allocation funds.

e. Regardless of what happens to Eyeline BTC, the trading allocation is safe and can continue to be traded.

**2. You are in control of your trading allocation funds.**

a. There will be an ON / OFF button in the back office where you can turn on and off the trading that is occurring. This means that each purchaser has discretion in how their individual account operates.

b. You can STOP the trading of your capital component any time from the day you make payment up the end of the 365 day trading period and request to have that trading allocation returned to you.

**3. Each individual account is held separately, like a PAMM account in Forex.**

**4. (PAMM – https://en.wikipedia.org/wiki/Percent_allocation_management_module)**

a. Each person has their own personal account with the trading company rather than a pooled account. Traders trade the collective total for maximum profit generation.

**5. Returns are on a "best efforts" basis... NOT guaranteed!**

a. The Trading Company works on a "best efforts" basis to achieve a return of UP TO 0.66% per day on the $500 of Bitcoin allocated from each pack.

b. There is NO guarantee of a fixed return.

# Exhibit 2



DURHAM JONES & PINEGAR, P.C.          James D. Gilson
111 South Main Street, Suite 2400     Attorney at Law
Salt Lake City, Utah  84111           jgilson@djplaw.com
801.415.3000
801.415.3500 Fax
www.djplaw.com

December 17, 2019

**Via E-mail and U.S. Mail**

Daniel Putnam
R&D Global, LLC
2441 N. 1675 E. Layton
Layton, UT 84040
[email address]

Angel Rodriguez
[address]
[email address]

**Re:     Request for Documents, Accounting, and Payment of Investment Funds**

Messrs. Putnam and Rodriguez:

This firm represents Jason Anderson and Jake Anderson (the "Andersons"). As you are both
aware, the Andersons invested substantial amounts of money with you and R&D Global
(dba several other entities, including Bitzolkin and EyelineBTC Bzlogin, GMM, Eyeline
Business Development), investing more than $3.3 million. The Andersons have become
aware of information that raises significant concerns about the status of their investment as
well as apparent breaches of their agreements with you. According to the Andersons'
understanding, their investment funds are in an account with Bitfinex that has been frozen.
It appears that although the Andersons were led to believe that the Bitfinex funds were only
recently frozen, they have instead been frozen for the majority of 2019. Additionally,
although the investment funds were supposed to be kept in separate, individual accounts for
them, the Andersons have learned that you have combined their investment funds with
funds of other investors and company entities. Simply put, the Andersons demand
documentation and an accounting to determine the status of their investment funds, and
demand immediate access to withdraw all of their funds.

Demand is hereby made against you as follows:

1.  Provide a full accounting to the Andersons, including but not limited to all

Daniel Putnam
Angel Rodriguez
December 17, 2019
Page 2

documentation regarding all investments they have made to date, tracking those investments from their inception to their present location;

2.   Provide complete documentation demonstrating that the Andersons' investment funds are being held by Bitfinex;

3.   Provide complete documentation demonstrating that the Andersons' investment funds were deposited into your GMM account and forwarded to Btfinex. Please include GMM statements and corresponding Hash.

4.   Pay to the Andersons' all of their investment funds;

5.   Identify all persons and entities having any involvement with your and/or Bitzolkin's management of the Andersons' investment funds;

6.   Identify all persons and entities having any involvement with you and the management or ability to transfer any part of the Andersons' investment funds;

7.   Please supply screenshots of the accounts at Bitfinex showing the accounts have indeed been frozen, when they were frozen and current balances.

8.   Take diligent steps to preserve and retain all tangible evidence relating to the Andersons' investments, including hard copies of documents and electronically stored information ("ESI"), as defined in Rule 34 of the Utah Rules of Civil Procedure, relevant to this matter.

To fulfill your preservation obligation, you must take reasonable steps to preserve all hard copy documents and ESI relevant to this matter, including, but not limited to:

(a)   Suspending any data destruction and backup tape recycling policies.

(b)   Retaining software, hardware, or other information required to access or view the ESI, such as identification codes, passwords, decryption applications, network access codes, and manuals.

(c)   Taking any other reasonable steps necessary to prevent the destruction, loss, override, or modification of relevant data, either intentionally or inadvertently, such as through modification of CT&C's document retention policy and systems.

Daniel Putnam
Angel Rodriguez
December 17, 2019
Page 2

All ESI must be preserved intact and without modification.

This above list is not exhaustive and you and Bitzolkin must preserve all information that is potentially relevant to this matter.  Failure to preserve relevant evidence may constitute spoliation of evidence, which may subject you to significant sanctions.

We ask that you comply and respond in writing to the undersigned to each of these demands by no later than 4:00 P.M. on Tuesday, December 24, 2019.

If you fail to respond as requested, the Andersons will pursue all appropriate legal remedies, including but not limited to injunctive relief, treble and punitive damages, interest, costs, and attorneys' fees, all of which are reserved.

Feel free to contact me, or have your legal counsel do so if you have counsel, if you have any questions as to the Andersons' position in this matter.

Very truly yours,

DURHAM JONES & PINEGAR, P.C.

James D. Gilson

cc:     Jason Anderson
        Jake Anderson

# Exhibit 3

James D. Gilson (5472)
Chris D. Wade (15278)
**DURHAM JONES & PINEGAR, P.C.**
111 S. Main, Suite 2400
Salt Lake City, Utah 84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
jgilson@djplaw.com
cwade@djplaw.com
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| JASON R. ANDERSON, an individual; JACOB ANDERSON, an individual; GORDON LARRY ANDERSON, an individual; BUSINESS FUNDING SOLUTIONS, LLC, a Utah limited liability company; and PROFIT VAULT, LLC, a Utah limited liability company, | **VERIFIED COMPLAINT**<br><br>**(JURY DEMANDED)**<br><br>Case No. 2:20-cv-00041-CMR<br><br>Magistrate Judge: Cecilia M. Romero |
| Plaintiffs, | |
| vs. | |
| DANIEL F. PUTNAM, an individual; ANGEL A. RODRIGUEZ, an individual; R&D GLOBAL, LLC, a Utah limited liability corporation dba BITZOLKIN, EYELINEBTC, BZLOGIN, GMM, and EYELINE BUSINESS DEVELOPMENT; and DOES 1 through 10, | |
| Defendants. | |

1

**PARTIES**

1.      Plaintiff Jason R. Anderson is, and at all times material hereto has been, an individual residing in Salt Lake County, State of Utah.

2.      Plaintiff Jacob Anderson is, and at all times material hereto has been, an individual residing in Salt Lake County, State of Utah.

3.      Plaintiff Gordon Larry Anderson is, and at all times material hereto has been, an individual residing in Washington County, State of Utah.

4.      Plaintiff Business Funding Solutions, LLC, is, and at all times material hereto has been, a limited liability company organized and existing under the laws of the State of Utah, maintaining its principal place of business in Draper, Utah.

5.      Plaintiff Profit Vault, LLC, is, and at all times material hereto has been, a limited liability company organized and existing under the laws of the State of Utah, maintaining its principal place of business in Heber City, Utah.

6.      On information and belief, Defendant Daniel F. Putnam ("Putnam") is, and at all times material hereto has been, an individual residing in Davis County, State of Utah.

7.      On information and belief, Defendant Angel A. Rodriguez is, and at all times material hereto has been, an individual residing in Utah County, State of Utah.

8.       On information and belief, Defendant R&D Global is a limited liability company organized and existing under the laws of the State of Utah, maintaining its principal place of business in Layton, Utah, and sometimes doing business as Bitzolkin, EyelineBTC, BZLogin, GMM, and Eyeline Business Development. Putnam owns and operate R&D Global.

2

SLC_4845045.2

9.      Defendants Does 1 through 10 are individuals or entities whose names and residence addresses are presently unknown but who participated in the wrongful acts alleged in this Complaint. Plaintiffs will move to amend the Complaint when further information is learned about these individuals.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' first cause of action arises under section 10(b) of the Securities Exchange Act of 1934, 15 U.SC. § 78j(b), and the rules and regulations promulgated thereunder, including Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. This Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

11.      This Court has personal jurisdiction over the defendants because the individual defendants are residents of the State of Utah, and because R&D Global is a Utah limited liability company that does business in Utah.

12.      Venue is proper in this Court under 28 U.S.C. § 1391 because the Defendants reside and do business in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## GENERAL ALLEGATIONS

13.      Plaintiffs Jason R. Anderson ("Jason") and Jacob Anderson ("Jacob") are brothers residing in Salt Lake County, and Plaintiff Gordon Larry Anderson ("Gordon") is their father.

SLC_4845045.2

14.     In late 2018, Defendant Daniel Putnam ("Putnam") approached Jason and Jacob with a proposal to invest their money with Putnam, who would manage the investments through Putnam's company, R&D Global.

15.     Putnam falsely represented to Jason and Jacob that their investments would have monthly returns of at least 10%, that the funds would be kept in separate, individual accounts, and that the funds would be invested in a cryptocurrency exchange called Bitfinex.

16.     Putnam made these representations knowing they were false or with a reckless disregard for the truth, for the purpose of inducing Jason and Jacob to give him money.

17.     Based on Putnam's representations and promises, Jason and Jacob entered into an agreement with Putnam and R&D Global in which Jason and Jacob would invest funds with Putnam and R&D Global, and Putnam and R&D Global would manage the investments in accordance the foregoing terms.

18.     Jason and Jacob invested more than $3.3 million with Putnam and R&D Global (dba several other entities, including Bitzolkin, EyelineBTC, Bzlogin, GMM, and Eyeline Business Development) over the course of late 2018 and 2019.

19.     Payments were made to R&D Global (dba the entities named above), through Putnam.

20.     Putnam was assisted in all material respects by Angel Rodriguez.

21.     Rodriguez traveled often to Columbia to meet with Jean Paul Ramirez Rico ("Jean Paul").

22.     Jean Paul is the CEO of Eyeline S.A.S., and Defendants represented that Jean Paul was also involved in investing Plaintiffs' funds.

4

23.     Upon information and belief, Putnam and Rodriguez worked in concert to defraud Defendants, and each of them knowingly used Plaintiffs' investment funds for their own purposes.

24.     Initially, Jason and Jacob's investment appeared to be providing a strong return based on their online account statements.

25.     In reliance on the promises made by Defendants to his sons Jason and Jacob, Gordon Anderson began investing funds with Putnam in 2019.  Gordon invested over $4 million through his company Profit Vault, LLC.

26.     In or around September of 2019, Plaintiffs' online accounts with Defendants stopped showing any profits.

27.     Plaintiffs were prohibited from withdrawing any investment funds, and lacked access to monitor the true status and location of their investments.

28.     Plaintiffs Jason and Jacob repeatedly sought information about the status of their accounts from Putnam, but he avoided them and refused to return their calls.

29.     In or around October of 2019, Plaintiffs were finally told by Putnam that Bitfinex had put a hold on their investment funds.

30.     However, upon information and belief, the hold was put on the investment funds much earlier, around May 2019.

31.     Despite knowing that Plaintiffs' investment funds were put on hold by Bitfinex, upon information and belief, Defendants' online portal continued to show that Plaintiffs' investment was performing strongly and that there was no hold on the funds.

32.     After many additional efforts to contact Defendants to find out the true status of Plaintiffs' investments, Plaintiffs have now been told by Putnam that instead of keeping investment funds in separate, individual accounts, Defendants combined Plaintiffs' investment funds with funds of other investors and company entities into one large, undifferentiated account.

33.     Plaintiffs have requested records to determine the status and location of their investment funds, but Defendants have refused to provide such information.

34.     On December 18, 2019, Jason and Jacob, through counsel, sent a demand letter to Defendants, requesting, among other things, a full accounting of their investment funds, seeking confirmation that their investment funds are currently held by Bitfinex, and demanding the return of their investments.

35.     Defendants have failed to respond to Plaintiffs' demand letter.

36.     Upon information and belief, Putnam, R&D Global, and Rodriguez misappropriated and mismanaged Plaintiffs' investment funds by, among other things, using the funds for wrongful and illegal purposes, failing to property track and account for the funds, and diverting the funds for their own use or for the use of others besides Plaintiffs.

37.     Putnam sought to expand the number of investors in the scheme by incentivizing referrals.

38.     Upon information and belief, Defendants operated their investment business like a Ponzi scheme, using new investment funds to pay other investors until they ran out of money.

39.     Defendant made many material misstatements to Plaintiffs, including but not limited to the following:

SLC_4845045.2

a.      claiming that Plaintiffs' investments would be held in separate, individual

accounts and not grouped together;

b.      claiming to be a broker or have access to a broker with proper

certifications;

c.      claiming that Plaintiffs' funds were being invested in accounts with

Bitfinex;

d.      claiming that Plaintiffs' funds would be safe and secure; and

e.      claiming that Plaintiffs' investments would appreciate by at least 10% per

month.

40.      Among the material omissions are the following:

a.      omitting to tell Plaintiffs that Defendants were using Plaintiffs' funds for

various illegal uses, such as paying off other investors and paying themselves;

b.      omitting to give Plaintiffs access to monitor their funds;

c.      omitting to tell Plaintiffs in a timely manner that their investment funds

were frozen;

d.      omitting to keep Plaintiffs informed about the true status of their

investment funds; and

e.       omitting to inform Plaintiffs as to the true risks and dangers of their

investment.

f.      omitting to disclose Defendants' lack of experience, credentials, licenses,

know-how, and capability to deliver returns on the investment as promised;

       g.       omitting to disclose that Defendants ignored protocols and standards in the industry to further Defendants' own financial interests.

41.     Had Defendants been honest, Plaintiffs would not have invested more than $7.3 million with Defendants.

42.     Defendants have wrongfully taken Plaintiffs' investment funds, for Defendants' personal gain and benefit.

43.     Defendants have sustained and will yet sustain significant damages from Defendants' actions.

***Alter Ego Allegations***

44.     In performing each of the foregoing acts and omissions, each Defendant either acted as the agent of the other Defendants or all the Defendants ratified such acts, or both.

45.     Each Defendant acted with an awareness of their wrongdoing and realized that their conduct would substantially assist in the accomplishment of Defendants' wrongful conduct.

46.     Plaintiffs believe and are informed, and thereby allege on information and belief, that R&D Global, Rodriguez, and Putnam are the agents, servants, employees, licensees, guarantors, invitees or assignees of each other, and in doing the actions or inactions alleged acted within the course and scope of their relationships with each other with the full knowledge and consent of each other.

47.     Plaintiffs believe and allege that R&D Global, and Putnam and Rodriguez, are and were the alter egos of each other. Plaintiffs believe and allege that Putnam and Rodriguez exercised control and dominion over R&D Global, with a disregard for the separate legal status

of the entity to defraud Plaintiffs and to avoid accountability for managing Plaintiffs' investments.

48.     R&D Global was not adequately capitalized.

49.     Putnam, Rodriguez, and R&D Global commingled Plaintiffs' funds with personal and other funds, and Putnam, Rodriguez, and R&D Global otherwise wrongfully acted to Plaintiffs' detriment.

50.     Plaintiffs allege that adherence to the fiction of R&D Global as a separate entity distinct from Putnam and Rodriguez would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

## FIRST CLAIM FOR RELIEF
### (Securities Fraud in Violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 - Against All Defendants)

50.     Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

51.     The investment scheme at issue involved the offer and sale of securities by Defendants.

52.     In connection with the sale of securities to Defendants or the purchase a securities by Plaintiffs, Defendants violated Section 10(b) of the Securities Exchange Act and Rule 10b-5 by: (a) employing a device, scheme, or artifice to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated as a fraud or deceit upon Plaintiffs, as all alleged in the preceding paragraphs of this Complaint.

9

53.     The misrepresentations or omissions of material facts or scheme to defraud were furthered by use, means, or instrumentalities of interstate commerce, including telephone, the mail, and the Internet, by Defendants.

54.     At the time of the misrepresentations and omissions, Plaintiffs were ignorant of their falsity and reasonably believed them to be true.

55.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.

56.     The misrepresentations or omissions of material facts or scheme to defraud by Defendants were made with the intent to deceive, manipulate, or defraud Plaintiffs.

57.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder, and are liable to Plaintiffs for so doing.

58.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their purchase of securities in an amount to be proven at trial, but which is reasonably expected to exceed $7.3 million, plus interest, costs, and attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (Securities Fraud in Violation of Utah Uniform Securities Act, Utah Code Annotated § 61-1-1 and -22 - Against All Defendants)

59.     Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

SLC_4845045.2

60.     In connection with the sale of securities to or the purchase of securities by

Plaintiffs, Defendants violated Utah Code § 61-1-1 and -22 by directly or indirectly: (a)

employing a device, scheme, or artifice to defraud; (b) making untrue statements of material fact

and omitting to state material facts necessary in order to make the statements made, in light of

the circumstances under which they were made, not misleading; and (c) engaging in acts,

practices and courses of business which operated as a fraud or deceit upon Plaintiffs, as all

alleged in the preceding paragraphs of this Complaint.

61.     At the time of Defendants' misrepresentations, Plaintiffs were ignorant of their

falsity and reasonably believed them to be true.

62.     At the time of Defendants' omissions, Plaintiffs did not know Defendants omitted

material facts necessary to make the statements made not misleading.

63.     Defendants had actual knowledge of the misrepresentations and omissions of

material facts set forth herein, or acted with disregard for the truth in that they failed to ascertain

and to disclose such facts, even though such facts were available to them.

64.     Defendants made the misrepresentations and omitted to disclose the material facts

set forth herein for the purpose of inducing Plaintiffs to make the investment described herein.

65.     By virtue of the foregoing, Defendants recklessly and intentionally violated the

Utah Uniform Securities Act, Utah Code § 61-1-1 and -22, and are liable to Plaintiffs for so

doing.

66.     As a direct and proximate result of Defendants' violations of the Utah Uniform

Securities Act, Plaintiffs have been damaged in an amount to be established at trial, which is

reasonably expected to exceed $7.3 million plus interest, and, pursuant to Utah Code § 61-1-22, is properly trebled, plus Plaintiffs' costs and attorneys' fees.

## THIRD CLAIM FOR RELIEF
### (Sales by Unlicensed Broker Dealers in Violation of Utah Uniform Securities Act, Utah Code Annotated § 61-1-3 - Against All Defendants)

67.     Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

68.     In connection with the sale of securities to or the purchase of securities by Plaintiffs, Defendants violated Utah Code Annotated § 61-1-3 by acting as a broker dealer or agent of a broker dealer without being licensed.

69.     By virtue of the foregoing, defendants recklessly and intentionally violated the Utah Uniform Securities Act, Utah Code Annotated § 61-1-3.

70.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their purchase of the security in an amount to be proven at trial, but which is reasonably expected to exceed $7.3 million plus interest, plus interest, and, pursuant to Utah Code § 61-1-22, is properly trebled, plus interest thereon, plus Plaintiffs' costs and attorneys' fees.

## FOURTH CLAIM FOR RELIEF
### (Sales by Unregistered Securities in Violation of Utah Uniform Securities Act, Utah Code Annotated § 61-1-7 - Against All Defendants)

71.     Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

72.     In connection with the sale of securities to or the purchase of securities by Plaintiffs, Defendants violated Utah Code Annotated § 61-1-7 by selling securities which were not registered, exempt from registration, or the subject of notice filing under law.

73.     By virtue of the foregoing, defendants recklessly and intentionally violated the Utah Uniform Securities Act, Utah Code Annotated § 61-1-7.

74.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been damages and continue to be damaged in an amount to be proven at trial, but which is reasonably expected to exceed $7.3 million plus interest, and, pursuant to Utah Code Annotated § 61-1-22, is properly trebled, plus interest thereon, plus Plaintiffs' costs and attorneys' fees.

## FIFTH CLAIM FOR RELIEF
### (Fraud/Intentional Misrepresentation - Against All Defendants)

75.     Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

76.     Defendants in this case committed numerous acts of fraud.

77.     Among the material misstatements made by Defendants are the following:

a.     claiming that Plaintiffs' investments would be held in separate, individual accounts and not grouped together;

b.     claiming to be a broker or have access to a broker with proper certifications;

c.     claiming that Plaintiffs' funds were being invested in accounts with Bitfinex; and

d.     claiming that Plaintiffs' funds would be safe and secure.

78.     Among the material omissions are the following:

a.       omitting to tell Plaintiffs that Defendants were using Plaintiffs' funds for

various illegal uses, such as paying off other investors and paying themselves

more than agreed upon;

b.       omitting to give Plaintiffs access to monitor their funds;

c.       omitting to tell Plaintiffs in a timely manner that their investment funds

were frozen;

d.       omitting to keep Plaintiffs informed about the true status of their

investment funds; and

e.        omitting to inform Plaintiffs as to the true risks and dangers of their

investment.

f.       omitting to disclose Defendants' lack of experience, credentials, know-

how, and capability to deliver returns on the investment as promised;

g.       omitting to disclose that Defendants ignored protocols and standards in the

industry to further Defendants' own financial interests;

79.     Defendants' statements and omissions were false or misleading and Defendants

knew at the time that they were false and misleading.

80.     Plaintiffs reasonably relied on these misstatements and omissions to their

detriment, and to make their decisions to invest with Defendants.

81.     As a direct and proximate result of Defendants' misstatements and omissions,

Plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably

expected to exceed $7.3 million plus interest.

82. Defendants' conduct was willful, intentional, or was done with a reckless disregard of Plaintiffs' rights, and Defendants are therefore also liable to Plaintiffs for punitive damages to punish and deter Defendants from such conduct, in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### (Conversion - Against All Defendants)

83. Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

84. Defendants held Plaintiffs' funds in trust. In violation of that trust, Defendants converted Plaintiffs' funds to their own benefit and self-enrichment, or for other purposes not authorized by Plaintiffs.

85. As a result of such conversion, Plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably expected to exceed $7.3 million plus interest.

86. Defendants' conduct was willful, intentional, or was done with a reckless disregard of Plaintiffs' rights, and Defendants are therefore also liable to Plaintiffs for punitive damages to punish and deter Defendants from such conduct, in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty - Against All Defendants)

87. Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

88. Defendants owed fiduciary duties to Plaintiffs, given the position of trust granted to them by Plaintiffs to manage Plaintiffs' investments.

SLC_4845045.2

89.     As a result, Defendants had a duty of utmost care to appropriately protect Plaintiffs' investment, and had a duty of loyalty not to engage in self-dealing, and to not engage in the wrongful conduct as alleged in this Complaint.

90.     In breach of their fiduciary duties, Defendants failed to protect Plaintiffs' interests by, among other things, misrepresenting material facts to Plaintiffs, omitting to tell Plaintiffs critical facts that would have allowed them to preserve and protect their investment, failing to keep investment funds in separate accounts, and omitting to tell Plaintiffs the true status and location of their investment funds.

91.     As a result of these breaches of fiduciary duties, Plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably expected to exceed $7.3 million plus interest.

92.     Defendants' conduct was willful, intentional, or was done with a reckless disregard of Plaintiffs' rights, and Defendants are therefore also liable to Plaintiffs for punitive damages to punish and deter Defendants from such conduct, in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
### (Negligence - Against All Defendants)

93.     Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

94.     Each of the Defendants owed a duty of care to Plaintiffs. Each of them had specific responsibilities regarding the investment of Plaintiffs' funds, reporting of information, management of accounts and funds, and otherwise protecting Plaintiffs' investment.

95.     The Defendants breached their duties as set forth in this Complaint.

16

96.     As a result of Defendants' breaches of duty, Plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably expected to exceed $7.3 million plus interest.

### NINTH CLAIM FOR RELIEF
### (Breach of Contract - Against All Defendants)

97.     Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

98.     Defendants and Plaintiffs entered into an agreement as described herein, wherein Defendants promised the Plaintiffs that their invested funds would be kept separate from other investors, that they could access and liquidate their investments at any time, and that they would be safe and secure and would provide a substantial return.

99.     Plaintiffs performed all the terms and conditions of the agreement.

100.     The Defendants breached their duties as set forth in this Complaint, by, among other things, failing to manage and protect Plaintiffs' investment, failing to segregate and return investment funds.

101.     As a result of Defendants' breaches of duty, Plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably expected to exceed $7.3 million plus interest.

### TENTH CLAIM FOR RELIEF
### (Unjust Enrichment - Against All Defendants)

102.     Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

103.     Plaintiffs conferred a benefit upon Defendants.

SLC_4845045.2

104.    Defendants knew of and appreciated the benefit conferred upon them by
Plaintiffs.

105.    Defendants accepted and retained the benefit under circumstances which make it
inequitable for them to retain the benefit without payment of its value.

106.    As a result of Defendants' unjust enrichment, Plaintiffs have been damaged in an
amount to be proven at trial, but which is reasonably expected to exceed $7.3 million plus
interest.

## ELEVENTH CLAIM FOR RELIEF
### (Accounting - Against All Defendants)

107.    Plaintiffs reallege and incorporate the allegations contained in the foregoing
paragraphs as though set forth in their entirety herein.

108.    As investors, Plaintiffs are entitled to an accounting of what Defendants did with
Plaintiffs' funds.

109.    Consequently, Plaintiffs seek an order compelling all Defendants to provide a full
accounting to Plaintiffs as to the disposition of Plaintiffs' funds, including copies of all source
documents relating to that accounting.

## TWELFTH CLAIM FOR RELIEF
### (Civil Conspiracy - Against All Defendants)

110.    Plaintiffs reallege and incorporate the allegations contained in the foregoing
paragraphs as though set forth in their entirety herein.

111.    Upon information and belief, Defendants combined together, agreed, and had a
meeting of the minds to formulate an engage in the scheme to defraud Plaintiffs as described
herein.

SLC_4845045.2

112.     By and through Defendants' scheme to defraud Plaintiffs, Defendants intended to induce Plaintiffs to invest substantial funds with Defendants, knowing that Defendants intended to divert Plaintiffs funds to their own use and not invest them as represented.

113.     By and through Defendants' scheme, Defendants intended to receive and retain funds invested by Plaintiffs and divert them to their own use.

114.     Defendants' conduct constitute unlawful, overt acts intended to defraud Plaintiffs.

115.     Plaintiffs have been damaged as a result of Defendants' conduct in an amount to be determined at trial, which is reasonably expected to exceed $7.3 million plus interest.

116.     Defendants' conduct was willful, intentional, or was done with a reckless disregard of Plaintiffs' rights, and Defendants are therefore also liable to Plaintiffs for punitive damages to punish and deter Defendants from such conduct, in an amount to be determined at trial.

**THIRTEENTH CLAIM FOR RELIEF**
**(Fraudulent Transfer - Against All Defendants)**

117.     Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

118.     Defendants improperly transferred and diverted Plaintiffs' investment funds out of Plaintiffs' investment accounts and used the funds to pay other creditors and otherwise diverted them to Defendants' own use, and did so with the actual intent to hinder, delay, or defraud Plaintiffs.

119.     The transfers were made without a reasonably equivalent value in exchange.

SLC_4845045.2

120.    Upon information and belief, R&D Global is insolvent as a result of the transfers, and at the time of the transfers, Defendants had reasonable cause to believe that R&D Global was insolvent.

121.    The transfers were made to insiders of Defendants.

122.    At the time of the transfers, Defendants were aware of R&D Global's obligations to Plaintiffs.

123.    Pursuant to the Utah Uniform Fraudulent Transfer Act (Utah Code § 25-6-1 *et seq.*), the transfers are fraudulent.

124.    Plaintiffs are entitled to the remedies available under the common law and the Utah Uniform Fraudulent Transfer Act, including but not limited to orders and Judgments against the Defendants as follows: an order avoiding the transfers; attachment against the funds involved in the transfers and against any subsequent distribution or conversion of funds to other forms of property; an injunction against further disposition of the funds involved in the transfers; the appointment of a receiver to take charge of the funds involved in the transfers; and such other relief as the circumstances require.

125.    Defendants' conduct was willful, intentional, or was done with a reckless disregard of Plaintiffs' rights, and Defendants are therefore also liable to Plaintiffs for punitive damages to punish and deter Defendants from such conduct, in an amount to be determined at trial.

## **<u>JURY DEMAND</u>**

Plaintiffs demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, as follows:

A.      Actual and consequential damages in an amount to be proven at trial, but in an amount not less than $7.3 million plus interest;

B.      Pre and post judgment interest, costs, attorney fees, and any other relief available to Plaintiffs at law or in equity;

C.      Treble damages and punitive damages in an amount to be determined at trial;

D.      For an injunction to be entered that, among other things, compels Defendants to return all of Plaintiffs' funds back to Plaintiffs and that prohibits Defendants from spending, transferring, secreting, or depositing of Plaintiffs' funds paid to Defendants; and

E.      Such other relief as the court deems appropriate under the circumstances.

DATED this 21st day of January, 2020.

By: /s/ *James D. Gilson*
        James D. Gilson
        Chris D. Wade
        **DURHAM JONES & PINEGAR**
        111 S. Main, Suite 2400
        Salt Lake City, Utah 84111
        *Attorneys for Plaintiffs*

SLC_4845045.2

**VERIFICATION**

Jason R. Anderson

STATE OF UTAH          )
                                      : ss.
COUNTY OF SALT LAKE  )

I, Jason R. Anderson, being duly sworn, state (1) that I am authorized to make this Verification on behalf of myself and Business Funding Solutions, LLC; (2) that I am familiar with the business and records of Business Funding Solutions, LLC; (3) that I have personal knowledge of the facts set forth in the foregoing Verified Complaint; and (4) that the facts set forth in the foregoing Verified Complaint are true to the best of my knowledge, information and belief.

DATED this 18 day of January, 2020.

Jason R. Anderson

SUBSCRIBED AND SWORN to before me this 18 day of January, 2020.

TAYLOR ANN HARVEY
NOTARY PUBLIC -STATE OF UTAH
My Comm. Exp 05/16/2022
Commission # 700472

Notary Signature and Seal

22

SLC_4845045.2

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Anderson, Jason R.; Anderson, Jacob; Anderson, Gordon L.; Business Funding Solutions, LLC; Profit Vault, LLC,

**(b)** County of Residence of First Listed Plaintiff _Salt Lake County_
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Durham Jones & Pinegar, 111 South Main Street, Suite 2400, Salt Lake City, UT 84111; 801-415-3000
James D. Gilson; Chris D. Wade

## DEFENDANTS

Putnam, Daniel; Rodriguez, Angel; R&D Global, LLC dba Bitzolkin, EyelineBTC, BZLogin, GMM, and Eyeline Business Development,

County of Residence of First Listed Defendant _Davis County_
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question
  *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. Section 78j(b)

Brief description of cause:
Securities Fraud

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 7,300,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE _1/21/2020_

SIGNATURE OF ATTORNEY OF RECORD _(signature)_

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____