Michael E. Welsh (Massachusetts Bar No. 693537)
welshmi@sec.gov
Casey R. Fronk (Illinois Bar No. 6296535)
fronckc@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel: (801) 524-5796

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | **MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff, | Case No. 2:20-cv-00301-DBB-DAO<br>District Judge David B. Barlow<br>Magistrate Judge Daphne A. Oberg |
| v. | |
| DANIEL F. PUTNAM, an individual; JEAN PAUL RAMIREZ RICO, an individual; ANGEL A. RODRIGUEZ, an individual; MMT DISTRIBUTION, LLC, a limited liability company; R&D GLOBAL, LLC, a limited liability company, | |
| Defendants, | |
| RICHARD T. PUTNAM, an individual, | |
| Relief Defendant. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................I

TABLE OF AUTHORITIES .............................................................................................. II

INTRODUCTION AND RELIEF REQUESTED ................................................................ 1

STATEMENT OF UNDISPUTED MATERIAL FACTS.................................................... 2

ARGUMENT ....................................................................................................................... 5

    I.     RODRIGUEZ VIOLATED SECTIONS 5(A) AND 5(C) OF THE SECURITIES ACT.... 6

        A.   Sections 5(a) and 5(c) Prohibit the Unregistered Offer and Sale of Securities. ............ 6

        B.   The "Trading Packages" Are "Investment Contracts" and Thus Securities. ................. 8

        C.   The Undisputed Evidence Presents a *Prima Facie* Case for Rodriguez's
           Violations of Sections 5(a) and 5(c). .................................................................... 10

    II.    RODRIGUEZ CANNOT ESTABLISH A REGISTRATION EXEMPTION. ................. 11

CONCLUSION ................................................................................................................ 13

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................... 6

*Berrios-Bones v. Nexidis, LLC*, 2007 WL 3231549 (D. Utah Oct. 30, 2007) ......................................... 8

*Bradford v. Moench*, 809 F. Supp. 1473 (D. Utah 1992) ........................... 12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................. 5

*Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073 (10th Cir. 2006) ........................... 6

*Crowly v. Montgomery Ward & Co.*, 570 F.2d 877 (10th Cir. 1978) ............................................. 9

*International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551 (1979) ..................................... 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .................................... 6

*McGill v. Am. Land & Expl. Co.*, 776 F.2d 923 (10th Cir. 1985) ................................................. 8

*Reves v. Ernst & Young*, 494 U.S. 56 (1990) ............................................... 7

*Rice v. United States*, 166 F.3d 1088 (10th Cir. 1999) ................................... 6

*SEC v. Art Intellect, Inc.*, 2013 WL 840048 (D. Utah Mar. 6, 2013) ......................................... 8

*SEC v. Autocorp Equities, Inc.*, 292 F. Supp. 2d 1310 (D. Utah 2003) ......................................... 7

*SEC v. Calvo*, 378 F.3d 1211 (11th Cir. 2004) ..................................................... 7, 10

*SEC v. Dalius*, 2023 WL 3988425 (C.D. Cal. May 24, 2023) .................................. 11

*SEC v. Edwards*, 540 U.S. 389 (2004) ................................................................... 7

*SEC v. GenAudio Inc.*, 32 F.4th 902 (10th Cir. 2022) ................................... 6, 7, 10, 12

*SEC v. Holschuh*, 694 F.2d 130 (7th Cir. 1982) .......................................... 10

*SEC v. Kik Interactive, Inc.*, 492 F. Supp. 3d 169 (S.D.N.Y 2020) ............................................. 8

*SEC v. Levin*, 849 F.3d 995 (11th Cir. 2017) ............................................... 7, 10

*SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980) .............................................. 7

*SEC v. Ralston Purina Co.*, 346 U.S. 119 (1953) ......................................... 7, 11

*SEC v. Schooler*, 905 F.3d 1107 (9th Cir. 2018) .......................................... 12

*SEC v. Shavers*, 2014 WL 12622292 (E.D. Tex. Aug. 26, 2014) .......................... 8

*SEC v. Shields*, 744 F.3d 633 (10th Cir. 2014) ................................................................. 9

*SEC v. Thompson*, 732 F.3d 1151 (10th Cir. 2013) ...................................................... 5, 6, 7

*SEC v. Traffic Monsoon, LLC*, 245 F. Supp. 3d 1275 (D. Utah 2017) ...................... 7, 9

*SEC v. Universal Major Indus. Corp.*, 546 F.2d 1044 (2d Cir. 1976) ............................. 7

*SEC v. W.J. Howey,* 328 U.S. 293 (1946) ............................................................... 7, 8, 9

*Swenson v. Engelstad*, 626 F.2d 421 (5th Cir. 1980) .................................................. 12

*Tcherepnin v. Knight*, 389 U.S. 332 (1967) ................................................................. 7

*United States v. Arutunoff*, 1 F.3d 1112 (10th Cir. 1993) ........................................... 12

**Statutes**

Section 5 of the Securities Act of 1933,

    15 U.S.C. § 77e ....................................................................................................... 6

**Rules**

Fed. R. Civ. P. 56 ..................................................................................................... 5

Plaintiff Securities and Exchange Commission ("Commission") respectfully moves, pursuant to Rule 56 and Local Rule 56-1, for partial summary judgment as to its claims against Defendant Angel Rodriguez ("Rodriguez") for violations of Section 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"). The uncontroverted facts, as set forth herein, demonstrate that Rodriguez—the sole remaining defendant actively litigating this matter— violated Section 5 by participating in an unregistered offering of securities.

## INTRODUCTION AND RELIEF REQUESTED

This case involves the unregistered, fraudulent offering of securities of Defendant MMT Distribution, LLC ("MMT").  Beginning in or around February 2018, Rodriguez, along with his co-defendant Daniel Putnam ("Putnam"), raised millions from investors through the offer and sale of "cryptocurrency trading packages."  Putnam and Rodriguez told investors their money would be used to generate profits from purported crypto asset trading and arbitrage activities being conducted by their and co-Defendant, Jean Paul Ramirez ("Ramirez"); that investors would earn substantial returns "regardless of what is happening in the market;" and that the investments were SEC compliant.  In reality, the so-called "cryptocurrency trading packages" wee a sham, and they frequently used investor money for personal expenses and to make Ponzi payments to earlier investors.

MMT, Putnam, and Ramirez have consented to entry of judgment as to the liability alleged in the Complaint.  (*See* Dkt. Nos. 102, 103, 106.)  Only Defendant Rodriguez remains.  Here, the Commission seeks summary judgment as to its strict-liability claim against Rodriguez: participating in an unregistered securities offering in violation of Section 5 of the Securities Act. [1]

---

[1]  If the Court enters summary judgment in the Commission's favor, the only issues remaining for trial or further motion practice will be Rodriguez's liability under the anti-fraud provisions of the federal securities laws, and the appropriate remedy for each Defendants' violations.

(*See* Dkt. No. 1, Compl. ¶¶ 110–113.)  As such, for purposes of the present motion, the Court need not determine whether Defendants' scheme was premised on and perpetuated by fraud, or whether Rodriguez acted with a culpable state of mind.  Instead, summary judgment is appropriate if Rodriguez, regardless of his *mens rea*, participated in an unregistered securities offering.

The undisputed evidence establishes Rodriguez's violations of the federal securities laws. For over six years, Rodriguez and his co-Defendants solicited dozens of investors to purchase millions of Trading Packages as part of an unregistered offering.  There undisputed evidence establishes that the Trading Packages were not registered with the Commission.  Accordingly, Rodriguez is liable as a matter of law for participating in an unregistered securities offering, in violation of Sections 5(a) and 5(c) of the Securities Act.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      MMT (d/b/a Modern Money Team, Eyeline Trading, and WealthBoss), is a Utah limited liability company headquartered in Orem, Utah, and controlled by Defendant Putnam. (Dkt. No. 1, Compl. ¶ 12; Dkt. No. 53, Ans. ¶ 12);

2.      Rodriguez is a resident of Utah, and was a long-time colleague of Putnam in the multilevel marketing businesses ("MLM") industry.  At no time has Rodriguez been licensed in the securities industry.  (Dkt. No. 1, Compl. ¶¶ 14, 18, 35; Dkt. No. 53, Ans. ¶¶ 14, 18, 35; Appendix of Evidence ("Appx.") Ex. A, at 5–6.)

3.      In or around February 2018, Putnam, through Modern Money Team, began offering investors the option of purchasing so-called "cryptocurrency trading packages" or "wealth blocks" ("Trading Packages").  The Trading Packages were the result of a business relationship that Putnam developed with Ramirez, a resident of Colombia, who Putnam came to know through

Rodriguez.  (Dkt. No. 1, Compl. ¶ 35; Dkt. No. 53, Ans. ¶ 35); Appx. Ex. B, Rodriguez Dep. Tr., at 46:18–47:18; Ex. E, Ho Decl. ¶ 4.)

4.      To purchase the Trading Packages, some early investors wired funds or deposited cash into Defendants' personal bank account and bank accounts for MMT Distribution, LLC. Defendants would then to convert the fiat currency into digital assets, which were then transferred to Ramirez who would use the funds in his trading activities.  Eventually, Defendants began requiring investors to purchase the trading packages with digital assets. To facilitate the transfer of digital assets from investors, Putnam set up an account with Coinpayments, a payment processor that enables account holders to send and receive digital assets.  (Appx. Ex. E, Ho Decl. ¶ 9; Ex. G at 1; Ex. F, Klein Decl ¶ 7).

5.      The Trading Packages were sold in increments of $40.  There was no limit in the number of Trading Packages investors could purchase.  (Appx. Ex. D at 22; Ex. E, Ho Decl. ¶ 9.)

6.      During the relevant time period, Rodriguez communicated directly with Trading Packages investors.  Rodriguez (and other Defendants) told investors that 50% of the funds would be held in trading accounts controlled by Ramirez.  (Appx. Ex. A at 13 (Request for Admission No. 34); Ex E, Ho Decl. ¶ 4; Ex. B, Rodriguez Dep. Tr., at 68:5-23; Ex. D at 22.)

7.      Defendants' marketing materials promised investors weekly returns of about 2% and daily profits of up to 0.66% on the half of the funds that were to be invested in the Trading Packages (Appx. Ex. B, Rodriguez Dep. Tr., 38:17-39:22; Ex E, Ho Decl. ¶ 4.)

8.      The remaining 50% of investor proceeds would be retained by MMT to fund Defendants' marketing and operational costs of MMT. ((Appx. Ex. B, Rodriguez Dep. Tr., 38:17-39:22, 40:8-12; Ex. E, Ho Decl. ¶ 9; Ex. D at 22.)

9.      In or around May 2018, Rodriguez and Putnam began recruiting associates from their prior MLM businesses to market the Trading Packages.  Rodriguez attended trainings for MLM marketers and, on occasion, would provide them with information to share with investors. (Appx. Ex. B, Rodriguez Dep. Tr., 29:15–30:1, 31:11–33:1, 108:22-109:10, 118:1-24; Ex. C at 132; Ex E, Ho Decl. ¶ 4.)

10.      Defendants told investors they could expect a return of 70% within one year of investing in Trading Packages, and that the Trading packages derive profits from digital asset trading and arbitrage activities being conducted by "Licensed professionals with over 15 years experience in trading forex and crypto[.]"  (Appx. Ex. D, at 21; Ex E, Ho Decl. ¶ 9.)

11.      Defendants' marketing materials pitched Ramirez as a digital asset trader who had previously worked for Goldman Sachs and TD Ameritrade.  (Appx. Ex E, Ho Decl. ¶ 9.)

12.      Throughout the relevant time period, Rodriguez served as the primary translator and intermediary for Ramirez and Putnam.  Rodriguez frequently communicated with Ramirez, either in person or by phone or email.   (Appx. Ex. B, Rodriguez Dep. Tr., 31:11-17, 88:1-14; Ex. C.)

13.      Throughout the relevant time period, Rodriguez would discuss the Trading Packages with Ramirez, and he would relay Putnam's questions about the investment scheme. Additionally, Rodriguez would raise concerns with Ramirez, including investor complaints regarding funds missing from their accounts, as well late distributions of investors' profits from Ramirez's trading activity.  Rodriguez would routinely update Putnam on these conversations and strategize on how to message issues to investors. (Appx. Ex. B, Rodriguez Dep. Tr., 88:2-13; 143:12–144:4; 163:8-22, 173:1–174:11,  Ex. C at 148, 179-180, 230, 232.)

14.     In or around June 2019, Ramirez claimed that his crypto asset wallet was hacked and investor funds were stolen.  Soon thereafter, Rodriguez told Putnam that Ramirez would continue to make payments to investors "but he has to be careful because [Ramirez is] going to be paying from principal" and, therefore, will not "have anything to trade later."     (Appx. Ex. B, Rodriguez Dep. Tr., 195:20–196:17; Ex. C, at 548.)

15.     Despite the fact that Putnam and Rodriguez suspected Ramirez of operating a ponzi scheme, they continued to sell Trading Packages and facilitate the transfer of investor funds to crypto asset wallets controlled by Ramirez. (Appx. Ex. C, at 548; Ex. F, Klein Decl. ¶¶ 14–15.)

16.     In or around October 2019, Defendants told investors that Bitfinex, a crypto-asset trading platform, froze the trading account hosting investor funds and, as a result, Ramirez was unable to access investor funds or generate profits from his arbitrage activates.  As a result, investors stopped receiving any returns.  (Appx. Ex. B, Rodriguez Dep. Tr., 176:13–177:22; Ex. F, Klein Decl. at ¶¶ 14–15.)

17.     In total, Defendants sold approximately 30 million Trading Packages.  (Appx. Ex. C, at 828.)

18.     At no point was the offering of these "Trading Packages" registered with the Commission.  (Appx. Ex. I, Keliipuleole Decl.; Ex. J at 5 (Request for Admission No. 2).)

## ARGUMENT

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *SEC v. Thompson*, 732 F.3d 1151, 1156–57 (10th Cir. 2013).  A plaintiff moving for summary judgment meets its burden by establishing, for each element of its claims, that no reasonable trier of fact could find for the opposing party. *See Celotex*,

477 U.S. at 323.  Once the moving party has met its burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant and unnecessary will not be counted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Thompson*, 732 F.3d at 1157 ("[A] factual dispute cannot be said to be "genuine" if the non-movant can do no more than 'simply show that there is some metaphysical doubt as to the material facts[.]'") (quoting *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1084 (10th Cir. 2006)); *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999) ("To carry his burden, [the non-movant] must present more than a scintilla of evidence.").

Here, there is and can be no genuine dispute that Rodriguez violated Sections 5(a) and 5(c) of the Securities Act by participating in an offering of securities in the form of Trading Packages, which was not registered with the Commission and which did not qualify for any exemption to the registration requirements.

## I.      RODRIGUEZ VIOLATED SECURITIES ACT SECTIONS 5(a) AND 5(c).

### A.      Sections 5(a) and 5(c) Prohibit the Unregistered Offer and Sale of Securities.

Section 5(a) of the Securities Act makes it unlawful for any person, directly or indirectly, to use any means or instruments of transportation or communication in interstate commerce or of the mails to sell a security for which a registration statement is not in effect.  *See* 15 U.S.C. § 77e(a).  Similarly, Section 5(c) makes it unlawful to offer to sell a security through the mails or interstate commerce when a registration statement has not been filed with the Commission.  *See* 15 U.S.C. § 77e(c); *SEC v. GenAudio Inc.*, 32 F.4th 902, 939 (10th Cir. 2022).  The purpose of the

securities laws is to regulate investments "in whatever form they are made and by whatever name they are called." *SEC v. Edwards*, 540 U.S. 389, 393 (2004) (quoting *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990)). Thus, "[t]o make a *prima facie* case under §§ 5(a) and (c), the following elements must be shown: '(1) no registration statement was in effect as to the securities, (2) the defendant sold or offered to sell these securities, and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale.'" *GenAudio Inc.*, 32 F.4th at 939, quoting *SEC v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017); *see also SEC v. Autocorp Equities, Inc.*, 292 F. Supp. 2d 1310, 1327 (D. Utah 2003).

An investment contract is a "security" under the Securities Act where it involves "(1) investments of money; (2) in a common enterprise; (3) with profits derived solely from others' efforts." *SEC v. W.J. Howey,* 328 U.S. 293, 301 (1946). "In applying this definition of an investment contract, 'form should be disregarded for substance and the emphasis should be on economic reality.'" *SEC v. Traffic Monsoon, LLC*, 245 F. Supp. 3d 1275, 1301 (D. Utah 2017), quoting *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967). In other words, "Congress 'painted with a broad brush' in defining 'security,' so as to capture under the ambit of [the securities laws] the 'countless and variable schemes devised by those who seek the use of money of others on the promise of profits.'" *Thompson*, 732 F.3d at 1157, quoting *Reves*, 494 U.S. at 62.

Scienter is not required to prove a Section 5 violation, and the good faith of a defendant is not relevant in determining liability. *SEC v. Calvo*, 378 F.3d 1211, 1214 (11th Cir. 2004); *SEC v. Universal Major Indus. Corp.*, 546 F.2d 1044, 1046-47 (2d Cir. 1976). Furthermore, once a *prima facie* violation is established, a defendant bears the burden to prove that the securities offering qualified for an exemption. *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953). Courts construe those exemptions narrowly. *SEC v. Murphy*, 626 F.2d 633, 641 (9th Cir. 1980).

7

**B.      The "Trading Packages" Are "Investment Contracts" and Thus Securities.**

As an initial matter, the undisputed evidence shows that the Trading Packages offered and sold to investors constitute securities under the federal securities laws, because the evidence makes clear that the Trading Packages are securities in the form of investment contracts.

***First***, the investors solicited by Rodriguez and other Defendants provided "investments of money" to purchase the Trading Packages.  *See W.J. Howey*, 328 U.S. at 301.  Under *Howey*, a purchaser makes an "investment of money" when the purchaser gives up some "tangible and definable consideration," such as assets or money that subjects one to financial loss.  *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 560 (1979).  Here, Defendants sold Trading Packages in exchange for investor money in the form of U.S. Dollars or bitcoin.  (*See* Appx. Ex. D at 22; Ex. E, Ho Decl. ¶ 9.).  Thus, *Howey*'s "investment of money" requirement is satisfied. *SEC v. Kik Interactive, Inc.*, 492 F. Supp. 3d 169, 177–78 (S.D.N.Y 2020); *SEC v. Shavers,* 2014 WL 12622292, at *6 (E.D. Tex. Aug. 26, 2014).

***Second***, the investments in Trading Packages involved a "common enterprise," *see W.J. Howey*, 328 U.S. at 301, because the economic reality of the subject transactions was such that each "transaction is in reality an investment (that is, a transaction of a type in which stock is often given)," and thus "creates a 'common enterprise' and gives rise to a security falling within the ambit of the 1933 and 1934 Securities Acts." *See McGill v. Am. Land & Expl. Co.*, 776 F.2d 923, 925 (10th Cir. 1985).[2]  Indeed, the transactions were specifically marketed and sold to investors as "investments" and the investors would obtain a "profits" or a "return" on their investment.  (*See*,

---

[2] The "determining factor of a common enterprise and the economic reality of the transaction is whether or not the investment was for profit."  *SEC v. Art Intellect, Inc.*, 2013 WL 840048, at *15 (D. Utah Mar. 6, 2013) (quoting *Berrios-Bones v. Nexidis, LLC*, 2007 WL 3231549, at *5 (D. Utah Oct. 30, 2007)).

*e.g.*, Appx. Ex. B at 179; Ex. F, Klein Decl. ¶ 4, & Ex. E, Ho Decl. ¶ 9 (describing Trading Contracts as providing investors with an "opportunity to profit each day" and touting "returns" of up to "14 to 15% per month").)  Further, half of the investor proceeds were pooled by Defendants to fund their operations and marketing of the Trading Packages. (Appx. Ex. B, Rodriguez Dep. Tr., 38:17-39:22, 40:8-12; Ex. D at 22; Ex. E, Ho Decl. ¶9.).  Accordingly, the Trading Packages constituted a common enterprise under *Howey* and its progeny.

   ***Third***, the Trading Packages were offered and sold under the expectation that the profits (and investment return) on the Interests would be derived "from others' efforts." *See W.J. Howey*, 328 U.S. at 301.[3]  "Investments satisfy the third prong of the *Howey* test 'when the efforts made by those other than the investor are the ones which affect significantly the success or failure of the enterprise." *Traffic Monsoon*, 245 F. Supp. 3d at 1301 (quoting *SEC v. Shields*, 744 F.3d 633, 645 (10th Cir. 2014)).  Here, as marketed and sold to investors, it was the efforts of Defendants, not the purchasers of the Trading Packages, who would be responsible for the profits and success of the venture.  For example, Defendants promoted a hassle-free investment where investors "simply purchase a share and we start trading for you in days" (Appx. Ex. G at 4), touted Ramirez's experience as "a successful cryptocurrency trader who had previously worked for Goldman Sachs and TD Ameritrade" (Appx. Ex. E, Ho Decl. ¶ 2), and promised significant "trading profits" based on the efforts of the venture (Appx. Ex. G at 4).  There is no evidence that the solicited investors played, or were expected to play, any operational role in the business.  Indeed, investors relied on Defendants to make all decisions that would affect the profitability of their investment.  The

---

[3] *See also Traffic Monsoon*, 245 F. Supp. 3d at 1301 (quoting *Crowly v. Montgomery Ward & Co.*, 570 F.2d 877, 879 (10th Cir. 1978)) ("The word 'solely' used in the Howey test should not be read as a strict or literal limitation on the definition of an investment contract, but rather must be construed realistically, so as to include within the definition those schemes which involve in substance, if not form, securities." (cleaned up)).

undisputed evidence establishes that the Trading Packages meet each of the *Howey* requirements for an investment contract.

### C.   The Undisputed Evidence Presents a *Prima Facie* Case for Rodriguez's Violations of Sections 5(a) and 5(c).

The uncontroverted evidence further shows that Rodriguez violated Sections 5(a) and 5(c) of the Securities Act by participating in the offer and sale of the Membership Interests (and other financial instruments). "To make a *prima facie* case under §§ 5(a) and (c), the following elements must be shown: '(1) no registration statement was in effect as to the securities, (2) the defendant sold or offered to sell these securities, and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale.'" *GenAudio Inc.*, 32 F.4th at 939, quoting *Levin*, 849 F.3d at 1001.   Furthermore, Rodriguez may be liable as a "necessary participant" or "substantial factor" in the unregistered offer or sale of the Mine Shaft securities if he was involved in the organization or promotion of the securities offering.  *See Calvo*, 378 F.3d at 1215; *SEC v. Holschuh*, 694 F.2d 130, 140 (7th Cir. 1982) (defendant's actions in details of plan to issue new securities created primary liability as participant).

***First***, there is and can be no dispute that there was no registration statement in effect as to Defendants' offering of the Trading Packages.  (*See* Appx. Ex. I, Keliipuleole Decl.; Ex. J at 5 (Request for Admission No. 2).)

***Second***, it is beyond dispute that Rodriguez sold and offered to sell the Trading Packages to prospective investors—or at a minimum participated in their offer and sale.  Rodriguez admits that he frequently spoke to investors about the Trading Packages (Appx. Appx. Ex. A at 13 (Request for Admission No. 34); Ex. B, Rodriguez Dep. Tr., at 68:5-23), and bank records demonstrate that he received payments in connection with an "investment" in these Trading Packages (*E.g.*, Appx. Ex. ¶17; E Ex. H at 1 ($3,000 wire payment to Rodriguez for "Eyeline

Investment").)   Moreover, the undisputed evidence demonstrates that Rodriguez was a key intermediary between Putnam and Ramirez.  (*See*, *e.g.*, Appx. Ex. B, Rodriguez Dep. Tr., at 88:2-13; Ex. C).  In addition to relaying all communications between Putnam and Ramirez, Rodriguez facilitated the deposits of investor funds into Ramirez's trading accounts and the distributions of investor "profits" from the Rodriguez's trading efforts to investors through Putnam's crypto asset accounts. (*see*, *e.g.*, Ex. B, Rodriguez Dep. Tr., at 88:2-13; Ex. C; *SEC v. Dalius*, 2023 WL 3988425, at *11 (C.D. Cal. May 24, 2023) (holding "defendant's extensive role in facilitating transactions … demonstrated that defendant both directly and indirectly sold unregistered securities.").)   Moreover, Rodriguez trained MLM marketers in connection with the offering of Trading Packages.  (Appx. Ex. B, Rodriguez Dep Tr. 118:13-24.)

        *Third*, there can be no dispute that both other Defendants and Rodriguez used the means of interstate communication, including telephone and e-mail, to communicate with prospective investors, facilitate the sale of the Trading Packages, and distribute the profits from the trading activity to investors (*see*, *e.g.*, Appx. Ex. A at 13 (Request for Admission No. 34); Ex. B, Rodriguez Dep Tr. 108:24–109:2; Ex. C at 1, 3, 132, 135, 138, 147), and investors were instructed to transmit their funds via wire transfer or via crypto assets to purchase the Trading Packages.  (*See*, *e.g.*, Appx. Ex. G; Ex. H.)  Again, at the bare minimum, Rodriguez was a substantial participant in this offer and sale of securities in interstate commerce.  As such, there is no dispute as to the facts, and the Commission has established a *prima facie* case for Rodriguez's violations of Section 5.

## II.     Rodriguez Cannot Establish a Registration Exemption.

        To defeat summary judgment, and because the Commission has established a *prima facie* case for violations of Sections 5(a) and 5(c), Rodriguez bears the burden of proving that an exemption from registration applies to the Trading Packages at issue. *See Ralston Purina Co.*, 346

U.S. at 126 ("Keeping in mind the broadly remedial purposes of federal securities legislation, imposition of the burden of proof on an issuer who would plead the exemption seems to us fair and reasonable."); *GenAudio Inc.*, 32 F.4th at 940 ("The so-called private offering exemption is an affirmative defense which must be raised and proved by the defendant") (quoting *Swenson v. Engelstad*, 626 F.2d 421, 425 (5th Cir. 1980)); *Bradford v. Moench*, 809 F. Supp. 1473, 1496 (D. Utah 1992) ("A party claiming an exemption from registration bears the burden of proving that the exemption applies.").

Here, Rodriguez has failed to plead as an affirmative defense that any exemption to registration applied to the offer and sale of the t securities at issue.[4]  (*See* Dkt. No. 50, Ans. at 11–13.)  And even if he had pled the defense, he has not provided (and cannot provide) evidence to support his burden that the offer and sale of the securities falls within an exemption to the registration provisions of Section 5.  For example, there is no evidence that the Trading Packages were offered and sold only to "investors who have no need for the protection provided by registration."  *See GenAudio, Inc.*, 32 F.4th at 940, quoting *United States v. Arutunoff*, 1 F.3d 1112, 1118 (10th Cir. 1993).  Thus, because Rodriguez cannot establish a registration exemption, his participation in the offer and sale of the Trading Packages violated Section 5 of the Securities Act as a matter of law, regardless of his state of mind.

---

[4]  None of Rodriguez's affirmative defenses (*see* Dkt. No. 28, Ans. at 11–12), is relevant here.  For example, Rodriguez pleads that "Plaintiff's Complaint fails to state a claim for which relief can be granted," but Rodriguez has not filed (and now, after answering, cannot timely file) a Rule 12(b)(6) motion to dismiss, and has not moved on those grounds by the dispositive motion date. Likewise, Rodriguez pleads that he was acting in "good faith," but good faith is not a defense to the strict liability claims at issue here.  *E.g., SEC v. Schooler*, 905 F.3d 1107, 1115 (9th Cir. 2018) ("Section 5 is a strict liability statute." (cleaned up).

## CONCLUSION

The undisputed evidence establishes that Rodriguez is liable, as a matter of law, for violations of Sections 5(a) and 5(c) of the Securities Act.  The Commission thus respectfully requests that the Court enter summary judgment as to Rodriguez's liability as to the Fifth Cause of Action in the Commission's Complaint.  (*See* Dkt. No. 2, Compl. ¶¶ 110–113.)


**Dated**: July 28, 2023


*/s/ Michael E. Welsh*
Michael E. Welsh
Casey R. Fronk

*Attorneys for Plaintiff*
*Securities and Exchange Commission*

**CERTIFICATE OF SERVICE**

On this 28th day of July 2023, I hereby certify that I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification and service to all counsel of record.

/s/ *Michael E.  Welsh*